ATTORNEYS FOR APPELLANT
Suzy D. St. John
Ruth A. Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Monika P. Talbot
Ellen H. Meilaender
Stephen R. Creason
Deputy Attorneys General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S02-1312-CR-789



FILED

CLERK
of the supreme court,
court of appeals and
tax court

KEION GADDIE,                                        *Appellant (Defendant)*,

v.

STATE OF INDIANA,                                   *Appellee (Plaintiff)*.

_____

Appeal from the Marion Superior Court, No. 49F19-1208-CM-53729
The Honorable Shatrese M. Flowers, Master Commissioner

_____

On Transfer from the Indiana Court of Appeals, No. 49A02-1212-CR-953

_____

**June 27, 2014**

**Dickson, Chief Justice**.


Following a bench trial, Keion Gaddie was convicted of Resisting Law Enforcement as a Class A misdemeanor. His appeal argues that the evidence is insufficient to sustain his conviction. The Court of Appeals reversed. Gaddie v. State, 991 N.E.2d 137 (Ind. Ct. App. 2013). We reach the same result but granted transfer to put to rest a conflict among various decisions in the Court of Appeals.


On August 4, 2012, around 10:30 p.m., Indianapolis Metropolitan Police Officer Jeffery

Newlin responded to a report of a "disturbance" at a residence in Indianapolis. Tr. at 7. When he arrived, he saw about eight people standing on the front porch and in the front yard "screaming and yelling." *Id.* He saw several other people, one of whom was the defendant, walking along a side yard toward the back. Officer Newlin told the group to return to the front yard with the purpose of watching everyone until back-up arrived. Everyone but the defendant complied. Back-up then arrived. Officer Newlin, who was in full police uniform, headed toward the back, identified himself as a police officer, and told the defendant to stop. *See id.* at 10 ("stop, police. Stop, police."). The defendant continued walking along the curtilage of the residence toward an alley. Officer Newlin followed him and, "screaming extremely loud," repeated his order to stop. *See id.* at 9–10 ("Police Department, stop walking. Stop."). The defendant looked back at Officer Newlin two or three times but continued walking. Officer Newlin then radioed for help, and another officer intercepted the defendant at the next street over about 45 seconds later.

The defendant was charged with Resisting Law Enforcement by fleeing after being ordered to stop by a law enforcement officer. At the bench trial, Officer Newlin testified that, upon responding to a report of a disturbance at a residence, he was corralling people in the front yard for everyone's safety when the defendant disregarded the officer's order to stop by walking away. The officer testified that the defendant only walked, that he had not seen the defendant or anyone else commit a crime prior to ordering the defendant to stop, and that the defendant was not under arrest when ordered to stop. The defendant testified that he lived at the residence where the incident occurred, that a disturbance had indeed occurred that night but had broken up by the time the police arrived, and that he was in the process of leaving before Officer Newlin arrived. The trial court found the defendant guilty as charged.

The defendant's appeal is predicated upon a claim of insufficient evidence, but the defendant does not specify the element of the offense for which the proof is allegedly lacking. In relevant part, the Resisting Law Enforcement statute provides: "A person who knowingly or intentionally . . . (3) flees from a law enforcement officer after the officer has, by visible or audible means . . . identified himself or herself and ordered the person to stop; commits resisting law en-

2

forcement, a Class A misdemeanor . . . ."  Ind. Code § 35-44.1-3-1(a)(3) (2012).[1]  In the appellate review of an insufficient evidence claim, we determine whether the probative evidence and reasonable inferences drawn from it—without regard to weight or credibility—could have allowed a reasonable trier of fact to find each of the elements of the charged offense proven beyond a reasonable doubt.  Joslyn v. State, 942 N.E.2d 809, 811 (Ind. 2011).  We note that the evidence clearly establishes that the defendant disregarded and walked away from a law enforcement officer who had adequately identified himself.  Because the defendant's argument focuses on whether the defendant had a duty to stop, we view his claim as alleging insufficient evidence to prove the element "after the officer has . . . ordered the person to stop."

## 1.  The "Ordered the Person to Stop" Element

The defendant relies upon cases applying the Fourth Amendment to hold that an individual has a duty to stop only if the encounter with police is an arrest or detention based upon probable cause or an investigatory stop based upon a reasonable and articulable suspicion that criminal activity may be afoot.  *See* Briggs v. State, 873 N.E.2d 129, 132 (Ind. Ct. App. 2007), *trans. denied*; Bovie v. State, 760 N.E.2d 1195, 1197 (Ind. Ct. App. 2002), *trans. not sought*.  The State, in turn, cites to a line of cases[2] which largely trace back to Corbin v. State, 568 N.E.2d 1064, 1065 (Ind. Ct. App. 1991), *trans. not sought*, for the proposition that the lawfulness of the order is irrelevant because the statute defining the offense does not expressly condition the offense upon a lawful order.

The Fourth Amendment to the United States Constitution provides that the right of the people to be secure in their persons against unreasonable search and seizure shall not be violated.

---

[1] This statute has been recodified.  It was previously listed under Indiana Code section 35-44-3-3(a)(3) (2011) and amended in ways immaterial to this opinion.

[2] Yowler v. State, 894 N.E.2d 1000, 1004 (Ind. Ct. App. 2008), *trans. not sought*; Cole v. State, 878 N.E.2d 882, 886 (Ind. Ct. App. 2007), *trans. not sought*; Dandridge v. State, 810 N.E.2d 746, 749 (Ind. Ct. App. 2004), *trans. denied*; State v. Howell, 782 N.E.2d 1066, 1067 (Ind. Ct. App. 2003), *trans. not sought*; Lashley v. State, 745 N.E.2d 254, 261 (Ind. Ct. App. 2001), *trans. denied*; *see also* Alspach v. State, 755 N.E.2d 209, 211 (Ind. Ct. App. 2001) (addressing the right to resist with reasonable force an unlawful arrest by police), *trans. denied*.  To the extent reasonable suspicion may be required for an investigatory stop, the State also relies on Williams v. State, 959 N.E.2d 357, 359 (Ind. Ct. App. 2011), *trans. denied*.

U.S. CONST. amend. IV.  At minimum, the government's seizure of a citizen must rest on specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot.  *See* Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 911 (1968).  The Supreme Court in Terry stressed that it had "always recognized" that:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

392 U.S. at 9, 88. S.Ct. at 1873, 20 L.Ed.2d at 898 (quoting Union Pac. Ry. Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed.2d 734, 737 (1891)).  Recognizing "the practical and constitutional arguments pressed with great vigor on both sides," Terry, 392 U.S. at 10, and the "incredibly rich" diversity in street encounters between citizens and police officers, *id.* at 13, the United States Supreme Court rejected a "rigid all-or-nothing model of justification and regulation under the Amendment," *id.* at 17, and adopted a reasonableness-under-the-circumstances approach.  *Id.* at 19–20.  The Court concluded in part that, a police officer *could stop* and frisk a citizen only if the officer had a reasonable suspicion based on his experience and specific, articulable facts "that criminal activity may be afoot."  *Id.* at 30.

The State cites California v. Hodari D. for the proposition that a person who flees an order to stop has not been "seized" because a seizure under the Fourth Amendment requires either physical force or submission to an assertion of authority.  499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690, 697 (1991).  Under the State's view, it is irrelevant that the Resisting Law Enforcement statute makes it a criminal act for a citizen to refuse to submit to a police officer's assertion of authority and order to stop.  The Court in Hodari D. was not presented with such a statute.  In fact, the United States Supreme Court has recognized that a person is seized when his freedom to terminate an encounter is restrained:

> In [a situation where freedom of movement is restricted by a factor independent of police conduct], the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. . . . As we have explained, no seizure occurs . . . so long as the officers do not convey a message *that compliance with their requests is required.*

Florida v. Bostick, 501 U.S. 429, 436–37, 111 S.Ct. 2382, 2387–88, 115 L.Ed.2d 389, 400 (1991) (emphasis added); *see* Terry, 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903 ("It must

4

be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). If a citizen's freedom to walk away is deemed a criminal offense merely because it follows an officer's command to halt—even in the absence of probable cause or reasonable suspicion—then the citizen's freedom is restrained contrary to the protections of the Fourth Amendment. A person approached by police "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so . . . ." Florida v. Royer, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983) (citations omitted), *cited with approval* in Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 577 (2000) ("[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business.").

A person's well-established freedom to walk away is thus violated when that person is subjected to a statute that makes it a criminal offense to decline a police order to stop. To hold that a citizen may be criminally prosecuted for fleeing after being ordered to stop by a law enforcement officer lacking reasonable suspicion or probable cause to command such an involuntary detention would undermine longstanding search and seizure precedent that establishes the principle that an individual has a right to ignore police and go about his business.

The State argues that persons whose Fourth Amendment rights are violated by an unlawful police order to stop may seek redress through civil liability, the exclusionary rule, or both. We reject this argument for two reasons. First, in cases such as this where the only alleged crime is the act of fleeing itself—versus, for example, the possession of an illegal substance like that in Hodari D., the exclusion of the fruits of such unlawful seizure would be of no benefit to the defendant. Second, we remain unpersuaded that it would be better policy to empower law enforcement to stop anyone on a whim and require aggrieved citizens to undergo the time and expense of civil litigation than to require law enforcement to have a reason for interference.

We agree with the State that the language of the Resisting Law Enforcement statute, on its face, does not expressly require that the order to stop be lawful. Literally applied, however,

the "after the officer has . . . ordered the person to stop" element of the statute, if applied in the absence of probable cause or reasonable suspicion, constitutes an unreasonable detention and impairs a citizen's "right to ignore the police and go about his business," Wardlow, 528 U.S. at 125, 120 S.Ct. at 676, 145 L.Ed.2d at 577, contrary to the Fourth Amendment,

Rather than invalidate the statute as unconstitutional, however, we prefer to construe it in a manner so that it does not violate the Constitution. "If there is more than one reasonable interpretation of a statute, at least one of which is constitutional, we will choose that path which permits upholding the act." Baldwin v. Reagan, 715 N.E.2d 332, 338 (Ind. 1999). In Baldwin, we interpreted the Indiana Seatbelt Enforcement Act (which literally authorized law enforcement officers to stop a vehicle "to determine compliance" with the Act) to prohibit a police officer from stopping a motorist in Indiana for a possible seat belt violation "unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by law." *Id.* at 337.

For these reasons, in order to interpret the statute as constitutional, we hold that the statutory element "after the officer has . . . ordered the person to stop" must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot. Absent proof that an officer's order to stop meets such requirements, the evidence will be insufficient to establish the offense of Resisting Law Enforcement by fleeing.[3]

## 2. Evidence of Reasonable Suspicion

---

[3] Our decision today, holding that the offense of Resisting Law Enforcement by fleeing after being ordered to stop requires that an officer's order to stop be based on probable cause or reasonable suspicion of criminal activity, should not be understood to necessarily apply to other statutes related to police authority to impinge on individual conduct as part of their community caretaking function. *See, e.g.*, Ind. Code § 9-21-8-1 (2012) ("It is unlawful for a person to knowingly fail to comply with a lawful order or direction of a law enforcement officer invested by law with *authority to direct, control, or regulate traffic*.") (emphasis added) and Ind. Code § 12-26-4-1 (2013) ("A law enforcement officer, having reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment, *may* . . . [a]pprehend and transport the individual to the nearest appropriate facility.") (emphasis added). In the present case, the State does not contend that the officer's command to stop was made pursuant to the officer's community caretaking function.

6

The State argues that in responding to a reported disturbance, Officer Newlin had reasonable suspicion to believe that criminal activity had occurred and had the authority to stop the defendant to stabilize the situation and ensure everyone's safety. It urges that the officer was dispatched to investigate a disturbance and thereby had reasonable suspicion to conduct an investigatory stop and to command the defendant to stop.

Officer Newlin testified that he had responded to "just a disturbance" and that he had not seen the defendant or anyone else commit a crime prior to ordering the defendant to stop. Tr. at 15. Our legislature has not defined a "disturbance" as a crime, and thus a report of a disturbance, without more, is not a sufficient basis upon which to conduct an investigatory stop. *See* State v. Atkins, 834 N.E.2d 1028, 1033–34 (Ind. Ct. App. 2005) (holding that the investigatory stop lacked reasonable suspicion that criminal activity was afoot but adding that "[t]his case might have been different if [the defendant] had fled, engaged in furtive activity, and was uncooperative, or if [the officer] had a description of the suspect that was corroborated upon seeing [the defendant]."), *trans. denied*. Further, refusal to cooperate with police must be distinguished from unprovoked flight. Wardlow, 528 U.S. at 125, 120 S.Ct. at 676, 145 L.Ed.2d at 577; *see* Bostick, 501 U.S. at 437, 111 S.Ct. at 2387, 115 L.Ed.2d at 400 ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Wardlow, 528 U.S. at 124, 120 S.Ct. at 676, 145 L.Ed.2d at 576. Here, however, the defendant did not change his behavior when Officer Newlin appeared and ordered him to stop; he looked back two or three times but continued walking. *See, e.g.*, Atkins, 834 N.E.2d at 1033 (finding no reasonable suspicion where the defendant did not change his behavior but continued walking in the police officer's direction). And the mere existence of a disturbance, standing alone, does not identify specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot, as is required for a valid investigatory stop. *See* Terry, 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911. Thus, the circumstances of the disturbance and Officer Newlin's presence do not provide sufficient evidence to prove the element that the order to stop was supported by probable cause or reasonable suspicion.[4]

---

[4] Although not argued by the State, we observe that a citizen's conduct, after being commanded to stop, cannot retroactively justify the officer's command. The order to stop must itself be supported by

**Conclusion**

To avoid conflict with the Fourth Amendment, Indiana Code section 35-44.1-3-1(a)(3), the statute defining the offense of Resisting Law Enforcement by fleeing after being ordered to stop must be construed to require that a law enforcement officer's order to stop be based on reasonable suspicion or probable cause. Under the facts and circumstances of this case, a reasonable trier of fact could not have found that the officer's order to stop was based on such probable cause or reasonable suspicion. The evidence was thus insufficient to convict the defendant of the crime of Resisting Law Enforcement by fleeing a police order to stop. We reverse the judgment of the trial court.

Rucker, David, Massa, Rush, JJ., concur.

---

probable cause or reasonable suspicion preceding or concurring with the stop order to support a conviction for fleeing law enforcement. While not shown by the facts of this case, we also acknowledge that a person's conduct after receiving an order to stop from police may provide a new basis for reasonable suspicion or probable cause to support a subsequent order to stop, from which Resisting Law Enforcement by fleeing could be successfully prosecuted.