

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 6, 2015

Court of Appeals Case No.
49A04-1411-CR-511

Appeal from the Marion Superior Court

The Honorable Linda E. Brown, Judge

Case No. 49G10-1409-CM-041810

**Vaidik, Chief Judge.**

# Case Summary

[1]     In August 2014, an Indianapolis police officer responded to a call that a person was down. Upon arrival the officer saw Richard Jones standing over a female lying in the middle of the street. When the officer asked Jones to "come here," Jones continued to walk to the other side of the street. A witness approached

the officer and told him that he had seen Jones standing over the female, yelling at her, and daring her to get up. The officer again asked Jones to "come here," but Jones continued to walk off.

[2] The trial court found Jones guilty of Class A misdemeanor resisting law enforcement, and Jones now appeals arguing that the evidence is insufficient to prove that he had a duty to stop and, therefore, Officer Miller did not have reasonable suspicion to order him to stop. Because the evidence is insufficient to prove that the order to stop was supported by reasonable suspicion, we reverse his conviction.

# Facts and Procedural History

[3] On August 28, 2014, Indianapolis Metropolitan Police Department Officer Darrell Miller was dispatched to 38th Street and Clarendon Road, for "a person down." Tr. p. 7. Upon arrival Officer Miller noticed a female—later identified as Dorie Howe—lying in the middle of the street and Jones "standing over" her. *Id.*; *but see id.* at 13 (Officer Miller testifying on cross examination that Jones was "walking away" from Howe when he arrived). When Officer Miller approached the scene he was in a marked car with his emergency and spot lights on, and he was wearing his police uniform. Officer Miller did not observe any criminal activity upon his arrival. *Id.* at 14. Still in his police car, Officer Miller asked Jones, who was walking to the other side of the street, to "come here"; Jones, however, continued to walk. *Id.* at 8. Howe remained on the ground. At this point, the man who had called 911 approached Officer

Miller and told him what he had seen. The witness explained that the female was lying on the ground and that the male was standing over her, shouting at her and daring her to get up. *Id*. at 9. Officer Miller never obtained the name of the witness. *Id*. at 12.

[4] Officer Miller asked Jones to "come here" again. Jones made a motion and began talking on his phone as he continued to walk eastbound on 38th Street. *Id*. As Jones was walking eastbound, Howe got up off the ground and began walking in the opposite direction. At this point Officer Miller and Officer Linda Roeschlein, who had since arrived on the scene, "were confused and did not know what was really going on." *Id*. at 10. Officer Roeschlein checked on Howe while Officer Miller followed Jones in his patrol car. *Id*. Howe was uncooperative with Officer Roeschlein and was released without incident. *Id*. at 15. When Officer Miller turned onto 38th Street, he saw Jones sitting on the curb and flashed his spotlight on him. Jones got up and began walking northbound to Byram Avenue. As Officer Miller turned onto Byram Avenue to follow Jones, he passed two parked cars and "lost visual sight when [Jones] dove into the bushes." *Id*. at 10, 14. Officer Miller saw the bushes moving and found Jones lying face down in the bushes. Officer Miller "ordered [Jones] out of the bushes at gun point . . . [,] holstered [his] weapon . . . [,] went in the bushes, drug him out[,] and cuffed him." *Id*. at 32.

[5] A bench trial was held, and Jones was found guilty of Class A misdemeanor resisting law enforcement. The trial court sentenced Jones to 365 days in the Marion County Jail with 283 days suspended to probation.

[6] Jones now appeals.

# Discussion and Decision

[7] Jones contends that the evidence is insufficient to support his conviction. When an appellant challenges the sufficiency of the evidence, we do not reweigh the evidence nor the credibility of the witnesses. *Gaddie v. State*, 10 N.E.3d 1249, 1252 (Ind. 2014). We only determine whether the probative evidence and reasonable inferences drawn from it could have allowed a reasonable trier of fact to find each of the elements of the charged offense proven beyond a reasonable doubt. *Id.*

[8] To convict Jones of resisting law enforcement as charged here, the State was required to prove beyond a reasonable doubt that Jones knowingly fled from Officer Miller after he had, by visible or audible means, identified himself and ordered Jones to stop. Ind. Code § 35-44.1-3-1(a)(3); Appellant's App. p. 11. Jones argues that the evidence is insufficient to prove that he had a duty to stop and, therefore, Officer Miller did not have reasonable suspicion to order him to stop.

[9] The Fourth Amendment to the United States Constitution gives people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures." U.S. Const. amend. IV. "At minimum, the government's seizure of a citizen must rest on specific, articulable facts that

lead an officer to reasonably suspect that criminal activity is afoot." *Gaddie*, 10 N.E.3d at 1253 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

[10] The Indiana Supreme Court recently addressed whether a police officer's order to stop must be lawful before a defendant is required to stop in *Gaddie v. State*. In that case, a police officer responded to a report of a "disturbance" at an Indianapolis house. *Id.* at 1252. When he arrived, the officer saw about eight people standing on the front porch and in the front yard "screaming and yelling." *Id.* When the group began walking toward the back of the house, the officer ordered them to return to the front yard. Everyone but the defendant complied. The officer followed the defendant and told him to stop. The defendant, however, continued walking toward an alley. The officer continued to follow him and repeated his order to stop. Again, the defendant continued walking. The officer radioed for back up, and another officer stopped the defendant about forty-five seconds later. The State charged the defendant with resisting law enforcement by fleeing. The defendant appealed arguing that the evidence was insufficient to support his conviction because he did not have a duty to stop.

[11] In agreeing with the defendant, our Supreme Court reasoned, "If a citizen's freedom to walk away is deemed a criminal offense merely because it follows an officer's command to halt—even in the absence of probable cause or reasonable suspicion—then the citizen's freedom is restrained contrary to the protections of the Fourth Amendment." *Id.* at 1254. Quoting *Florida v. Royer*, 460 U.S. 491 (1983), the Court noted that a "person approached by police 'need

not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so . . . .'" *Id.* Accordingly, the Court concluded that a "person's well-established freedom to walk away is thus violated when that person is subjected to a statute that makes it a criminal offense to decline a police order to stop." *Id.*

> To hold that a citizen may be criminally prosecuted for fleeing after being ordered to stop by a law enforcement officer lacking reasonable suspicion or probable cause to command such an involuntary detention would undermine longstanding search[-]and[-]seizure precedent that establishes the principle that an individual has a right to ignore police and go about his business.

*Id.* In order to interpret the resisting-law-enforcement statute as constitutional, the Court held that the statutory element "after the officer has . . . ordered the person to stop" "must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot." [1] *Id.* at 1255. "Absent proof that an officer's order to stop meets such requirements, the evidence will be insufficient to establish the offense of Resisting Law Enforcement by fleeing." *Id.*

---

[1] Our Supreme Court agreed with the State that the language of the resisting-law-enforcement statute, on its face, does not expressly require that the order to stop be lawful. However, the Court held that if the statute were applied literally in the absence of probable cause or reasonable suspicion, it would constitute "an unreasonable detention and impair[] a citizen's right to ignore the police and go about his business." *Gaddie*, 10 N.E.3d 1249 (quotation omitted).

[12]     Applying the law to the facts, the Court noted that the defendant did not change his behavior when the officer appeared and ordered him to stop; he looked back two or three times but continued walking. The Court also noted that "the mere existence of a disturbance, standing alone, does not identify specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot, as is required for a valid investigatory stop." *Id.* at 1256. Accordingly, the Court concluded that the circumstances of the disturbance and the officer's presence did not provide sufficient evidence to prove the element that the order to stop was supported by probable cause or reasonable suspicion. *Id.* Finally, the Court noted that although not argued by the State, "a citizen's conduct, after being commanded to stop, cannot retroactively justify the officer's command. The order to stop must itself be supported by probable cause or reasonable suspicion preceding or concurring with the stop order to support a conviction for fleeing law enforcement." *Id.* at 1256 n.4.

[13]     The State argues that the facts in this case are distinguishable from the facts in *Gaddie* and that "[a]t a minimum," the facts "could lead Officer Miller to reasonably suspect that [Jones] had committed battery, criminal confinement, and intimidation." Appellee's Br. p. 7. The State relies on the following five facts to support its claim that Officer Miller had reasonable suspicion to order Jones to stop: (1) Officer Miller observed Jones standing over Howe in the middle of the street when responding to a call that a person was down; (2) a witness approached Officer Miller and told him that he had seen the man standing over the female, yelling at her, and daring her to get up; (3) Howe

walked away when Jones left; (4) Jones continued to walk away when Officer Miller turned onto 38th Street; and (5) Jones dove into a bush.

[14] In regards to the first fact—Officer Miller's observation of Jones standing over Howe in the middle of the street when he arrived on the scene—Officer Miller did not see Jones intimidating or yelling at Howe. The mere existence of a person standing over another in a street, standing alone, does not identify specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot. *See Gaddie*, 10 N.E.3d at 1256 ("[T]he mere existence of a disturbance, standing alone, does not identify specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot . . . ."). The State argues, however, that the fact that Howe was lying in the street gave rise to a strong suspicion that something illegal had transpired, either to place her in that position or to keep her there. Appellee's Br. p. 6. But there could be other reasons why a person is lying in the street with another person standing over them, such as the person fell down or lay down intentionally and someone was trying to help them up. Either way, there was not enough information known to Officer Miller when he arrived on the scene to establish reasonable suspicion that Jones had engaged in criminal activity. *Gaddie*, 10 N.E.3d at 1256; *Bovie v. State*, 760 N.E.2d 1195, 1198 (Ind. Ct. App. 2002); *Stalling v. State*, 713 N.E.2d 922, 924 (Ind. Ct. App. 1999).

[15] As for the information provided by the witness who was never identified, it is well established in Indiana that "a tip from a concerned citizen may justify an investigatory stop if sufficiently reliable." *Russell v. State*, 993 N.E.2d 1176,

1180 (Ind. Ct. App. 2013). The reliability of a concerned-citizen tip "generally must be established by reference to underlying facts and circumstances which indicate that the information is trustworthy." *Id.* (quotation omitted). Here, Officer Miller did not observe anything that validated the information received from the concerned citizen. Moreover, there was no immediate threat to the general public or Howe, as she simply got up and walked away. ???And because Officer Miller did not observe any behavior from Jones that would have corroborated the information received, the circumstances permitted Officer Miller to establish the reliability of the information before using it to establish reasonable suspicion. *See Renzulli*, 958 N.E.2d at 1147; *see also Bogetti*, 723 N.E.2d at 880.

[16] As for the third fact—Howe walked away after Jones left—this also does not create any suspicion that criminal activity took place. Instead, it does the opposite—it equally shows that nothing criminal happened.

[17] Regarding the fourth fact—Jones continued to walk away from Officer Miller when he turned onto 38th Street—our Supreme Court in *Gaddie* found that the fact that the defendant continued to walk away did not constitute a change in behavior. 10 N.E.3d at 1256. Here, Jones was walking away as Officer Miller arrived on the scene, and he continued to do so when Officer Miller followed him onto 38th Street. Jones's "'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

[18] As for the final fact that Jones dove into a bush, because the order to stop must be supported by reasonable suspicion preceding or concurring with the stop, Jones's later behavior of diving into the bush does not establish reasonable suspicion when Officer Miller first told Jones to "come here."

[19] We find that the evidence was not sufficient to support Officer Miller having reasonable suspicion that criminal activity was afoot at the time of arrival onto the scene. Thus we reverse the trial court.

Reversed.

Kirsch, J., and Bradford, J., concur.