## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kobe Blake,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 4, 2015

Court of Appeals Cause No.
49A04-1412-CR-572

Appeal from the Marion Superior Court

The Honorable Linda E. Brown, Judge
The Honorable Marshelle D. Broadwell, Commissioner

Trial Court Cause No. 49G10-1409-CM-43539

**Bradford, Judge.**

## Case Summary

[1] On September 9, 2014, Appellant-Defendant Kobe Blake was arrested after he was alleged to have resisted law enforcement. Three days later, Appellee-Plaintiff the State of Indiana (the "State") charged Blake with Class A misdemeanor resisting law enforcement by flight. Blake was found guilty of the Class A misdemeanor charge following a bench trial.

[2] On appeal, Blake contends that the evidence is insufficient to sustain his conviction. The State concedes that under the reasoning employed by the Indiana Supreme court in *Gaddie v. State*, 10 N.E.3d 1249 (Ind. 2014), the evidence presented to the trial court is insufficient to sustain Blake's conviction. In light of the State's concession, we reverse Blake's conviction for Class A misdemeanor resisting law enforcement by flight.

# Facts and Procedural History

[3] On September 9, 2014, Officer Adrienne Aurs of the Indianapolis Metropolitan Police Department ("IMPD") was dispatched to the intersection of Tibbs and North Streets in Haughville. According to dispatch, an anonymous caller had reported a disturbance at the intersection with a suspicious black male standing at the northwest corner of the intersection yelling at someone on his cellular phone. The anonymous caller indicated that the suspicious individual had claimed to be running from the police and to have had narcotics on him. The anonymous caller indicated that the suspicious individual was wearing all black.

[4] When Officer Aurs arrived at the intersection, he saw Blake was standing on the northwest corner of Tibbs and North Streets in Haughville, talking on his cellular phone. Blake was wearing a black shirt with a red collar, blue jeans with holes in them, red shorts under the jeans, a black belt, and a red bandana. Blake also had a black pick in his hair.

[5] Officer Aurs approached Blake. Blake answered Officer Aurs's initial questions and took a pocket knife out of his pocket at Officer Aurs request. Blake reached into his pockets to retrieve identification after being asked by Officer Aurs for identification. Officer Aurs then told Blake not to reach into his pockets but to keep his hands where Officer Aurs could see them.

[6] Not knowing whether Blake was armed and out of concern for officer safety, Officer Aurs attempted to place Blake in handcuffs. Blake pulled away from Officer Aurs and ran away. Officer Aurs yelled at Blake to stop, gave chase, and deployed his taser. After tasing Blake, Officer Aurs handcuffed him and arrested him for resisting law enforcement.

[7] On September 12, 2014, the State charged Blake with Class A misdemeanor resisting law enforcement by flight. The trial court found Blake guilty following a bench trial. The trial court subsequently sentenced Blake to a term of 180 days executed in the Marion County Jail. One day after sentencing Blake, the trial court issued a *sua sponte* order reducing Blake's sentence to time served. Blake now appeals his conviction.

# Discussion and Decision

[8] Blake contends that the evidence is insufficient to sustain his conviction for Class A misdemeanor resisting law enforcement by flight.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[9] In order to prove that Blake committed the offense of Class A misdemeanor resisting law enforcement by fleeing, the State was required to prove that Blake (1) knowingly or intentionally (2) fled from Officer Aurs after Officer Aurs had "by visible or audible means … identified himself … and ordered [Blake] to

stop." Ind. Code § 35-44.1-3-1. In *Gaddie*, the Indiana Supreme Court held that in order to interpret Indiana Code section 35-44.1-3-1(a)(3) as constitutional,

> the statutory element "after the officer has ... ordered the person to stop" must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot. Absent proof that an officer's order to stop meets such requirements, the evidence will be insufficient to establish the offense of Resisting Law Enforcement by fleeing.

10 N.E.3d at 1255 (footnote omitted).

[10] The State concedes in the instant matter that the record is devoid of any specific, articulable facts that would have led Officer Aurs to reasonably suspect that criminal activity was afoot. As such, the State concedes that the evidence presented before the trial court is insufficient to establish the offense of resisting law enforcement by fleeing. In light of the State's concession of the issue on appeal, we conclude that the evidence is insufficient to sustain Blake's conviction for Class A misdemeanor resisting law enforcement by fleeing. Accordingly, we reverse Blake's conviction.

[11] The judgment of the trial court is reversed.

May, J., and Crone, J., concur.