## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2019, 6:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Appellate Division
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gina Marie Simari,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

July 30, 2019

Court of Appeals Case No.
18A-CR-2917

Appeal from the Lake Superior Court

The Honorable Samuel L. Cappas, Judge

Trial Court Cause No.
45G04-1711-F5-108

**Brown, Judge.**

[1] Gina Marie Simari appeals her convictions for battery resulting in bodily injury to a public safety officer as a level 5 felony and resisting law enforcement as a class A misdemeanor. She raises three issues which we revise and restate as whether the trial court committed fundamental error in admitting certain evidence, whether the evidence is sufficient to sustain her convictions, and whether the court violated double jeopardy principles by failing to vacate her conviction for resisting law enforcement as a level 6 felony. The State raises one issue which we revise and restate as whether the court erred by merging her conviction for resisting law enforcement as a level 6 felony into her conviction for battery resulting in bodily injury to a public safety officer as a level 5 felony. We affirm in part, reverse in part, and remand.

## *Facts and Procedural History*

[2] On November 26, 2017, Mauri Lamanuzzi's dog was barking, and she looked outside and noticed a male she did not know exit her garage. Lamanuzzi called her boyfriend, Avery Shepard. Shepard and his brother Elijah arrived, and Shepard went next door to a party and entered into an altercation with the men in the yard. Elijah joined in the altercation when it moved to an alley. At that point, there were four people in the alley fighting. The people next door got "the best of" Shepard and Elijah and went onto Lamanuzzi's property, and she called 911. *Id.* at 195. At some point, Shepard, Elijah, Simari, and Simari's boyfriend went to Lamanuzzi's back door. Lamanuzzi saw fighting and observed Simari throw Lamanuzzi's CDs, which had been in the center console of her vehicle, at her back door as well as a beer bottle.

[3] Munster Police Officer Kenneth Hass responded to a dispatch regarding a disturbance. When he first arrived at the scene, Officer Hass observed Simari walking toward him from "between the two addresses" and asked her where the disturbance was, but she said she did not know. Transcript Volume III at 22. He proceeded to the backyard "because the call note said the disturbance was between neighbors." *Id.* at 21. He verified in the backyard there was "an actual physical disturbance." *Id.* After meeting with other officers and trying to figure out what happened, he went back to obtain a statement from Simari because he had noticed she had a black eye which looked fresh. He asked her what happened, she started yelling at her neighbors, and he "had to step in between the two parties, so it would not get physical again." *Id.* at 24. He guided her by her shoulders to the front yard, and "[r]ight in the front yard she proceeded to take off in a dead sprint away from" him. *Id.*

[4] He "yelled, 'Police, stop,' because [he] was trying to investigate a battery." *Id.* at 25. He chased her and observed her throw an object from the front of her body. Simari fell due to her intoxication, and Officer Hass put his knee in her back to detain her to figure out what exactly happened and place her in cuffs, but she wiggled out from under him and punched him in the left side of his jaw. He radioed for backup and said to Simari, "Give me your hands. Give me your hands. You're being detained." *Id.* at 26. He smelled alcohol, and Simari kept saying: "F--- you, you mother – f-----." *Id.* at 27.

[5] Officer Hass requested an ambulance and tried to place her in his squad car because she stated that she had broken ribs from a previous altercation and his

placing his knee in her back hurt. She would not willingly enter the back seat of the squad car and crouched down between the floorboard and the door where the officers could not sit her up properly. Officer Hass attempted to buckle her in for her safety, she was "nipping," and he stated: "Don't f------ bite me. You'll regret it."[1] *Id.* at 29. She then bit his right bicep. Officer Hass transported Simari to the police department while she cussed and kicked.

[6] On November 27, 2017, the State charged Simari with: Count I, battery resulting in bodily injury to a public safety officer as a level 5 felony; Count II, resisting law enforcement as a level 6 felony; Count III, resisting law enforcement as a class A misdemeanor; and Count IV, theft as a class A misdemeanor.[2]

[7] In June 2018, the court held a jury trial. In his opening statement, the prosecutor stated: "At the conclusion of the evidence we're going to ask you to find her guilty of battery on a law enforcement and [sic] causing pain and injury to him, for biting him in the arm, for resisting law enforcement when Miss Simari punched him in the face." Transcript Volume II at 167. The State presented the testimony of witnesses including Lamanuzzi, Shepard, Officer Hass, and other officers.

---

[1] When asked what he meant by his statement, Officer Hass answered that there would be additional charges and that he was not indicating that he was going to retaliate physically.

[2] Count II alleged in part that Simari "inflicted bodily injury on or otherwise caused bodily injury to Kenneth Hass . . . ." Appellant's Appendix Volume II at 12. Count III alleged in part that Simari knowingly fled from Officer Hass.

[8]     In his closing argument, the prosecutor stated:

> Because the State of Indiana, we have to prove every element of that crime or it's not guilty for that charge. You have to prove every element.
>
> And the State of Indiana, State's case is TFFB. Now, you probably never heard of that before because I made it up. But it stands for this: Theft, flight, which is the resisting, fight, resisting at the other end by physical force, and bite. So we have theft, flight, fight and bite. Basically, what all our charges are about, and that's what we heard evidence about.
>
> I'm going to give you a little road map to make easier [sic] to make a decision. I'm just helping you make your decision based on what evidence you believed or what evidence you didn't believe.
>
> I'm going to start with the highest count in this case. That's the Level 5 felony. Right? And it says that the State of Indiana has to prove that a law enforcement officer, during the course of his duty, was injured. Right?
>
> So what did we have – who told us that? Well, we had Officer Hass testified that he was bitten by the defendant when he tried to place her in the car. You also had other officers testify that they saw that bite. I think it was retired Sergeant Newton, and one was Mr. Blanco testified that he was bitten.
>
> * * * * *
>
> Then we have resisting law enforcement. Right? That is going to be Count 2. This is the part – this count is the one where you have to prove that the Defendant, Miss Simari there, that she used physical force, actual physical force against the officers.
>
> Well, I mean, we had a video, and I think that video speaks for itself. You could hear the scuffle. You could see that even bringing her back, she was resisting. Even handcuffs, she didn't

want to stay with him. She tried to break away and did break away. Then he caught her again. She was fighting in the squad car.

So she was using physical force to escape him. She wasn't successful, but still the elements of the crime, you heard witnesses testifying to it. The State has fulfilled that.

Transcript Volume III at 195-197.

[9] The jury found Simari guilty as charged. The court entered judgment of conviction for each count. At the sentencing hearing, the court discussed the possibility of merging counts and stated:

> The issue is with regard to Counts 1 and 2. Does 2 – is 2 duplicative or double jeopardy? Does that come into play with those two counts? So in order to go through that analysis, we have to determine – I went through the elements test, and I find that there – the structural elements test, that there are distinct counts, but when you go to the actual evidence test, that's the one that is the more tricky of the two. So to determine whether the actual – the – is there a reasonable possibility that the jury could've used the same facts for those two convictions? I looked at the charges, of course, the evidence, the jury instructions, and I also had to endure relistening to the State's closing argument.
>
> The evidence was that Miss Simari is alleged to have punched Officer Hass and bitten him. And factually, there could have been arguments made that, well, each count – Count 1 and Count 2 each allege that Officer Hass received a bodily injury when he was engaged in the performance of his duties. One being rude, insolent, angry. The other one resulting in bodily injury. The State's closing argument only focuses on the bite that Officer Hass sustained during the arrest or cuffing of Miss Simari.

There's no mention made of the punch during the closing argument, although it did come out in the testimony.

So the State – because the State argued the bite, there is a reasonable possibility that the jury could have used that actual evidence to convict [Simari] of both Count 1 and Count 2 instead of separating out the punch goes to Count 1, bite goes to Count 2, or vice versa, however that would have came.

So my ruling would be or is that Count 2 gets tossed. Count 1 remains. So the Defendant would get sentenced on Counts 1, 3 and 4.

Transcript Volume IV at 59-60.

The court found that Count II, resisting law enforcement as a level 6 felony, merged into Count I, battery resulting in bodily injury to a public safety officer as a level 5 felony. The court sentenced Simari to two years and six months for Count I, and concurrent sentences of one year each for Count III, resisting law enforcement as a class A misdemeanor, and Count IV, theft as a class A misdemeanor.

## *Discussion*

### I.

We initially address whether the trial court committed error or fundamental error by admitting evidence that Simari struck and bit Officer Hass. Simari argues that Officer Hass did not have reasonable suspicion or probable cause that criminal activity took place prior to ordering her to stop. She contends that the admission of the evidence was fundamental error because she was illegally

seized without probable cause or reasonable suspicion that she had engaged in criminal activity under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The State argues that Officer Hass had reasonable suspicion to stop Simari to investigate the reported battery and probable cause to arrest her after she ran from him.

[12] Generally, because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). The ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo. *Id.* Failure to timely object to the erroneous admission of evidence at trial will procedurally foreclose the raising of such error on appeal unless the admission constitutes fundamental error. *Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015). Fundamental error is an "extremely narrow exception to the waiver rule" where the defendant bears the heavy burden of showing that a fair trial was impossible. *Harris v. State*, 76 N.E.3d 137, 139 (Ind. 2017).

[13] The Fourth Amendment to the United States Constitution provides that the right of the people to be secure in their persons against unreasonable search and seizure shall not be violated. U.S. CONST. amend. IV. "At minimum, the government's seizure of a citizen must rest on specific, articulable facts that lead an officer to reasonably suspect that criminal activity is afoot." *Gaddie v. State*, 10 N.E.3d 1249, 1253 (Ind. 2014). In *Gaddie*, the Indiana Supreme Court held

that the "statutory element 'after the officer has . . . ordered the person to stop'" in Ind. Code § 35-44.1-3-1(a)(3), the statute governing resisting law enforcement by fleeing, "must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot." *Id.* at 1255.

[14] Simari also argues that her rights under Article 1, Section 11 of the Indiana Constitution were violated. In evaluating the reasonableness of police conduct under Article 1, Section 11 of the Indiana Constitution, a reviewing court considers: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Carpenter*, 18 N.E.3d at 1002.

[15] While Simari cites *Gaddie*, we find that case factually distinguishable. In *Gaddie*, the Court observed that the officer testified that he had responded to "just a disturbance" and had not seen the defendant or anyone else commit a crime prior to ordering the defendant to stop. 10 N.E.3d at 1255. The Court observed that "refusal to cooperate with police must be distinguished from unprovoked flight" and that the defendant did not change his behavior when the officer appeared and ordered him to stop but merely continued walking. *Id.* at 1256. The Court concluded that the circumstances of the disturbance and the officer's presence did not provide sufficient evidence to prove the element that the order to stop was supported by probable cause or reasonable suspicion. *Id.*

[16] The record reveals that Officer Hass relied upon more than the mere existence of a report of a disturbance in ordering Simari to stop. He observed Simari between the two addresses, verified "an actual physical disturbance," noticed a black eye on Simari which looked fresh, observed Simari yelling at her neighbors, and had to step in between the parties "so it would not get physical again." Transcript Volume III at 24. At that point, Officer Hass guided Simari by her shoulders to the front yard and, when she sprinted away from him, he yelled at her to stop. We conclude that Officer Hass had reasonable suspicion to support guiding Simari to the front yard and probable cause once she did not comply with his order to stop and that his actions were reasonable. We cannot say that the admission of the evidence of Simari's conduct of biting and punching Officer Hass constituted fundamental error. *See Brown v. State*, 929 N.E.2d 204, 207-208 (Ind. 2010) (holding that the claimed error did not rise to the level of fundamental error and affirming the defendant's convictions where the defendant made no contention that he did not receive a fair trial other than his assertion that the evidence was the product of an unconstitutional search and seizure), *reh'g denied*.[3]

[17] To the extent Simari challenges the sufficiency of the evidence, she does not allege that the State failed to prove any elements of the offenses. Rather, she asserts that the evidence is insufficient because the evidence of her conduct

---

[3] Because we conclude that Officer Hass's actions were reasonable under the Fourth Amendment and Article 1, Section 11, we need not address the parties' arguments regarding the new crime exception.

following the point at which Officer Hass guided her to the front yard is inadmissible. Because we conclude that the trial court did not commit fundamental error in admitting this evidence, Simari's argument does not require reversal.

## II.

[18] We next address the State's assertion that the trial court erred by merging Count II into Count I and the State's concession with respect to Count III. The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. "Indiana's Double Jeopardy Clause . . . prevent[s] the State from being able to proceed against a person twice for the same criminal transgression." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001) (quoting *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). The Indiana Supreme Court has held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49.

[19] Generally, a double jeopardy violation under the actual evidence test occurs when there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted may also have been used to establish all the essential

elements of a second challenged offense. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015); *Vestal v. State*, 773 N.E.2d 805, 806 (Ind. 2002), *reh'g denied*. "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013) (quoting *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008)). The existence of a reasonable possibility turns on a practical assessment of whether the fact-finder may have latched on to exactly the same facts for both convictions. *Id.* at 720. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective . . . .'" *Hines*, 30 N.E.3d at 1222 (quoting *Lee*, 892 N.E.2d at 1234 (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002))). The Indiana Supreme Court has determined the possibility to be remote and speculative and therefore not reasonable when finding no sufficiently substantial likelihood that the fact-finder used the same evidentiary facts to establish the essential elements of two offenses. *Hopkins*, 759 N.E.2d at 640 (citing *Long v. State*, 743 N.E.2d 253, 261 (Ind. 2001), *reh'g denied*; *Redman v. State*, 743 N.E.2d 263, 268 (Ind. 2001)). "In determining the facts used by the fact-finder, 'it is appropriate to consider the charging information, jury instructions, [ ] arguments of counsel' and other factors that may have guided the jury's determination." *Hines*, 30 N.E.3d at 1222 (quoting *Lee*, 892 N.E.2d at 1234 (citing *Spivey*, 761 N.E.2d at 832, and *Richardson*, 717 N.E.2d at 54 n.48)).

[20] In his opening statement, the prosecutor stated: "At the conclusion of the evidence we're going to ask you to find her guilty of battery on a law

enforcement and [sic] causing pain and injury to him, for biting him in the arm, for resisting law enforcement when Miss Simari punched him in the face." Transcript Volume II at 167. Thus, the prosecutor indicated which specific acts the State was relying upon for Counts I and II. During closing argument, the prosecutor provided a "road map," discussed Count I, asserted that the State had to prove injury, and pointed out that Officer Hass testified that he was bitten by Simari. Transcript Volume III at 195. The prosecutor also mentioned Count II and referenced the scuffle, Simari's attempt to break away, and her fighting.

[21] Under these circumstances, we cannot say that there is a reasonable possibility that the jury relied upon the same evidentiary facts to support Count I as it did to support Count II. Accordingly, we remand with instructions for the trial court to sentence Simari on Count II. *See Payne v. State*, 777 N.E.2d 63, 67-68 (Ind. Ct. App. 2002) (addressing the State's argument that the trial court erred in merging the defendant's theft and burglary convictions, concluding that there was no reasonable possibility that the jury used the same evidentiary facts to convict the defendant of both burglary and theft, and remanding with instructions to sentence the defendant on the theft count).

[22] The State acknowledges that convictions for both Count II, resisting law enforcement as a level 6 felony, and Count III, resisting law enforcement as a class A misdemeanor, would violate double jeopardy. It also asserts that the conviction under Count III should be vacated because the evidence cannot

support convictions under Counts II and III. In light of the State's concession and the record, we vacate Simari's conviction for Count III.

### *Conclusion*

[23] For the foregoing reasons, we affirm Simari's conviction under Count I, battery resulting in bodily injury to a public safety officer as a level 5 felony, and remand for the trial court to enter a sentence for her conviction under Count II, resisting law enforcement as a level 6 felony, and to vacate her conviction under Count III, resisting law enforcement as a class A misdemeanor.

[24] Affirmed in part, reversed in part, and remanded.

May, J., and Mathias, J., concur.