## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2019, 11:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

F. Aaron Negangard
Chief Deputy Attorney General

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jewarr Woodson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

April 30, 2019

Court of Appeals Case No.
18A-CR-2708

Appeal from the Marion Superior Court

The Honorable Marshelle D. Broadwell, Magistrate

Trial Court Cause No.
49G17-1807-F6-22863

**Brown, Judge.**

[1] Jewarr Woodson appeals his conviction for resisting law enforcement as a level 6 felony. Woodson raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

## Facts and Procedural History

[2] On July 13, 2018, Officer Zachary Miller and Officer Tyler Swoveland of the Indianapolis Metropolitan Police Department were dispatched to an address on East 17th Street in Marion County related to a reported disturbance. The officers were in full uniform. When he arrived at the scene, Officer Swoveland spoke with a woman, R.H. After several minutes of speaking with her, Woodson came to a window and spoke to the officers through the window. The officers asked Woodson to exit the residence, but he initially did not do so. Woodson opened the door, and Officer Swoveland attempted to approach him while he was standing in the door, and Woodson shut the door. The officers did not believe Woodson was going to exit the residence willingly, and Officer Miller spoke to a detective about applying for a search warrant.

[3] Several minutes later, Woodson exited the residence and walked towards the sidewalk. Woodson started to walk past Officer Miller. Officer Miller told Woodson to stop, turn around, and place his hands behind his back. Officer Miller attempted to grab Woodson's right wrist, and Woodson "pulled his arm back in a jerking, aggressive motion to uh Officer Miller's grasp uh failed and he wasn't able to hold onto him." Transcript Volume 2 at 16. Officer Miller "tried to reengage with him and tried to grab him again," and at that point, Woodson turned around and "took both of his hands and pushed Officer Miller

in the upper chest and caused him to fall backwards and land on the sidewalk."
*Id*. As he was falling, Officer Miller reached up to grab Woodson, the two men fell to the ground, and Officer Miller's elbow hit the concrete and he was injured. Wilson was arrested.

[4] The State charged Woodson, as amended, with: Count I, criminal confinement as a level 6 felony; Count II, strangulation as a level 6 felony; Count III, battery resulting in bodily injury as a class A misdemeanor; Count IV, resisting law enforcement as a class A misdemeanor; Count V, domestic battery as a class A misdemeanor; and Count VI, resisting law enforcement as a level 6 felony. At the start of Woodson's bench trial, the prosecutor indicated the State was proceeding on Counts IV and VI. Officer Miller indicated that, when he arrived on the scene, he identified the parties to the disturbance. When asked "when [Woodson] came out of the house, how did he resist," Officer Miller testified, "at that point, we had just said - or we came to the conclusion that a crime did occur and that we needed to uhm detain him for the investigation and he attempted to away after I told him . . . to stop." *Id*. at 7. When asked "[a]nd you ultimately, through your investigation, had decided a crime had been committed, correct," he replied "[c]orrect." *Id*. at 10. Officer Swoveland testified that "after several minutes – minutes of speaking to [R.H.] outside, [Woodson] came to a window" and that, at the time Woodson exited the residence and Officer Miller told him to turn around, he believed a crime had been committed. *Id*. at 14. Officer Swoveland also testified "Officer Miller was speaking to a detective because originally, we believed [Woodson] wasn't going

to come out of the residence willingly, so we were going to have to apply for a search warrant." *Id*. at 18. Woodson's counsel moved for dismissal and argued the officers did not have reasonable suspicion of criminal activity and were not lawfully engaged in their duties. The prosecutor argued that the officers had investigated and then determined that Woodson had committed a crime. The court denied the motion to dismiss. The court found the State met its burden as to Counts IV and VI. At sentencing, it stated that it would vacate the class A misdemeanor under Count IV, sentenced Woodson to 200 days for resisting law enforcement as a level 6 felony under Count VI, and ordered him to pay restitution.

## *Discussion*

[5] The issue is whether the evidence is sufficient to sustain Woodson's conviction for resisting law enforcement as a level 6 felony. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. at 147.

[6] Woodson argues that the record fails to support the finding that the officers were lawfully engaged in their duties when they sought to restrain him. He

argues the record contains no evidence as to what crime the officers suspected him to have committed and no specific articulable facts that formulate reasonable suspicion or probable cause that he had committed a crime. He contends that a mere disturbance is insufficient reason to place someone in custody.

The State maintains that a person may not use force in resisting a peaceful arrest regardless of the lawfulness of the arrest and that Woodson knew the officers were performing their duties when he forcibly resisted. It argues that an individual does not have the freedom to physically assault a police officer as Woodson did when he turned and pushed Officer Miller. It also argues that the officers had reasonable suspicion that Woodson had committed a crime.

Ind. Code § 35-44.1-3-1(a) provides:

> A person who knowingly or intentionally:
>
> > (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;
> >
> > (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or
> >
> > (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;
>
> commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

The offense is a level 6 felony if the person inflicts bodily injury on or otherwise causes bodily injury to another person. *See* Ind. Code § 35-44.1-3-1(b)(1)(B). The State alleged in its information for Count VI that Woodson committed resisting law enforcement under Ind. Code § 35-44.1-3-1(a)(1) and Ind. Code § 35-44.1-3-1(b)(1)(B).

[9] The general rule in Indiana is that a private citizen may not use force to resist a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties, regardless of whether the arrest in question is lawful. *Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000) (citations omitted), *reh'g denied*, *trans. denied*. Woodson cites *Gaddie v. State*, 10 N.E.3d 1249 (Ind. 2014), in support of his position. In that case, a police officer responded to a report of a disturbance at a residence, when he arrived he saw about eight people on a porch and in the front yard screaming and yelling, and he saw several other people including the defendant walking along a side yard toward the back. 10 N.E.3d at 1252. The officer eventually headed toward the back, identified himself as an officer, and told the defendant to stop, but the defendant continued walking toward an alley. *Id.* The officer, screaming extremely loud, repeated his order to stop, and the defendant looked back at the officer two or three times but continued walking. *Id.* Another officer intercepted the defendant at the next street over. *Id.* The defendant was charged with resisting law enforcement by fleeing after being ordered to stop by a law enforcement officer and found guilty as charged. *Id.*

[10] The Indiana Supreme Court stated that the defendant's appeal was predicated upon a claim of insufficient evidence but the defendant did not specify the element of the offense for which the proof was allegedly lacking, that the relevant part of the resisting law enforcement statute was Ind. Code § 35-44.1-3-1(a)(3), and that, "[b]ecause the defendant's argument focuses on whether the defendant had a duty to stop, we view his claim as alleging insufficient evidence to prove the element 'after the officer has . . . ordered the person to stop.'" *Id*. at 1252-1253. The Court held that "the statutory element 'after the officer has . . . ordered the person to stop' must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot" and that "[a]bsent proof that an officer's order to stop meets such requirements, the evidence will be insufficient to establish the offense of Resisting Law Enforcement by fleeing." *Id*. at 1255 (footnote omitted). The Court found that the officer had responded to "just a disturbance," that "the mere existence of a disturbance, standing alone," does not identify specific articulable facts that lead an officer to reasonably suspect that criminal activity is afoot, and thus that the circumstances of the disturbance did not provide sufficient evidence to prove the element that the order to stop was supported by probable cause or reasonable suspicion. *Id*. at 1255-1256.

[11] In *Gaddie*, the defendant was charged with resisting law enforcement by fleeing after being ordered to stop, and the relevant part of the statute was subsection (a)(3). Here, the State charged Woodson with resisting law enforcement under

subsection (a)(1) of the statute and alleged that he "did knowingly or intentionally forcibly resist, obstruct or interfere with Zachary Miller, a law enforcement officer, while said officer was lawfully engaged in his duties as a law enforcement officer . . . ." Appellant's Appendix Volume II at 74-75. Further, the law enforcement officers in this case relied upon more than the mere existence of a disturbance or report of a disturbance in ordering Woodson to stop. The record reveals that the officers spoke with R.H. for several minutes before speaking with Woodson through a window. The officers asked Woodson to exit the residence, but he initially did not do so. Woodson opened the door, Officer Swoveland attempted to approach him, and Woodson shut the door. The officers did not believe Woodson was going to exit the residence and Officer Miller spoke to a detective regarding a search warrant. Officer Miller testified that, through his investigation, he had decided that a crime had been committed, and Officer Swoveland similarly testified that, at the time Officer Miller told Woodson to turn around and place his hands behind his back, he believed that a crime had been committed. After Officer Miller attempted to grab Woodson's wrist, Woodson pulled his arm back, and when Officer Miller attempted to grab him again, Woodson turned around and "took both of his hands and pushed Officer Miller in the upper chest," causing the officer to fall with Woodson and injure his elbow. Transcript Volume 2 at 16.

[12] Based upon our review of the evidence as set forth above and in the record, we conclude that the State presented evidence of a probative nature from which a

trier of fact could find beyond a reasonable doubt that Woodson committed the crime of resisting law enforcement as a level 6 felony.

[13]    For the foregoing reasons, we affirm Woodson's conviction.

[14]    Affirmed.

May, J., and Mathias, J., concur.