## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2020, 11:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Leon Jenkins,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 6, 2020

Court of Appeals Case No.
19A-CR-2520

Appeal from the Marion Superior Court

The Honorable David Certo, Judge

Trial Court Cause No.
49G12-1810-CM-35480

**Tavitas, Judge.**

## Case Summary

Ronald Jenkins appeals his conviction for resisting law enforcement, a Class A misdemeanor. We affirm.

## Issue

Jenkins raises one issue for our review, which we restate as whether the evidence is sufficient to convict Jenkins of resisting law enforcement, a Class A misdemeanor.

## Facts

On October 15, 2018, law enforcement was dispatched to a disturbance[1] between a male and a female on the 3900 block of East 31st Street in Marion County around 2:00 a.m. Officer Jade Pierson, with the Indianapolis Metropolitan Police Department, arrived at the scene in her fully marked police vehicle and full police uniform.

A witness pointed at a vehicle[2] parked in a yard and told Officer Pierson two people were physically fighting in the vehicle. As Officer Pierson approached

---

[1] Officer Pierson could not recall whether the report was of a "physical disturbance"; however, according to Officer Pierson, when she arrived on the scene, the witnesses reported that individuals were "physically fighting in the car." Tr. Vol. II p. 13.

[2] The parties dispute whether Officer Pierson was directed toward a gray vehicle or a red vehicle. Officer Pierson's police report, in the Appellant's appendix, notes that the disturbance was reported in the red car. Officer Pierson initially testified she was pointed toward a gray vehicle; the deputy prosecutor then asked: "And, so, you were notified that the red car was the disturbance you were called out for. What happened next when you found out this information?" Tr. Vol. II p. 7. Officer Pierson, later at the trial, also indicated that the nearby witnesses "specifically pointed to that vehicle" Jenkins was inside but did not indicate the color of the vehicle. *Id.* at 10. Regardless of the color of the vehicle, our review of the record leads us to

the vehicle, a second witness pointed to the same vehicle and reported two people fighting in the vehicle.

[5] As Officer Pierson approached the vehicle, she noticed the rear passenger window was down and a person was moving under a blanket inside the vehicle. Officer Pierson knocked on the window and identified herself as law enforcement, and a man, later identified as Jenkins, lifted his head from underneath the blanket. Officer Pierson asked Jenkins if he was okay and if there was anyone else in the vehicle with him. Jenkins responded that he was okay and that he was alone and sleeping.

[6] Officer Pierson asked Jenkins for his name, to which Jenkins told Officer Pierson he would not provide his "f***ing name." Tr. Vol. II p. 7. Officer Pierson asked Jenkins several more times for his name, and Jenkins continued to refuse to provide his name. Officer Ryan Salisbury arrived on the scene, and Jenkins continued to move under the blanket. To Officer Pierson, it appeared as if Jenkins was trying to conceal himself; thus, "for [officer] safety," the officers opened the back door of the vehicle and asked Jenkins to get out of the vehicle. *Id.* When Jenkins got out of the vehicle, he was still "not really complying" with the officers' requests. *Id.* The officers attempted to place Jenkins in handcuffs to "investigate further," and Jenkins "jerked his arms

conclude that Officer Pierson was only investigating and only pointed toward one vehicle. It does not appear there were two separate vehicles on the scene of Officer Pierson's investigation.

away several times and then tensed up his body making it difficult for [officers] to place him in cuffs." *Id.* at 7-8.

[7] Officers then asked Jenkins to sit on the ground several times; Jenkins refused, and officers assisted Jenkins to the ground using a "leg sweep technique." *Id.* at 8. Jenkins continued to resist once on the ground as officers attempted to obtain identification and began yelling loudly. Officers told Jenkins to be quiet, but he continued to yell, drawing the attention of several neighbors.

[8] On October 15, 2018, Jenkins was charged with Count I, resisting law enforcement, a Class A misdemeanor, and Count II, disorderly conduct, a Class B misdemeanor. Jenkins' bench trial was held September 26, 2019.

[9] During the trial, the deputy prosecutor asked Officer Pierson if she was "lawfully engaged in [her] duties to investigate during [the] entire occurrence," to which Officer Pierson responded affirmatively. *Id.* at 9. Officer Pierson testified that she was still investigating when Jenkins got out of the vehicle. On cross-examination, Officer Pierson agreed that there was no emergency during the investigation.

[10] At the end of the State's presentation of evidence, Jenkins moved for a motion to dismiss under Indiana Trial Rule 41(b). Jenkins argued in his Rule 41(b) motion that the disturbance call was not a specific, articulable fact that supported a finding of reasonable suspicion to support Officer Pierson's investigative stop of Jenkins. After the trial court denied the motion, Jenkins testified in his defense. Jenkins testified that: (1) he was asleep when the

officers arrived but recalled being pulled to his feet; (2) Jenkins was working on his girlfriend's car, which had broken down and was parked in the front yard of his mother's home; and (3) Jenkins' mother brought him food, a pillow, and a blanket just moments prior to Jenkins going to sleep in the vehicle.

[11] At the close of the evidence, the trial court found Jenkins guilty of Count I, and not guilty of Count II. The trial court sentenced Jenkins to three hundred and sixty-five days in the Marion County jail with three hundred and sixty-three days suspended. Jenkins now appeals his conviction.

## Analysis

[12] Jenkins argues the evidence presented was insufficient to support his conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied*. Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). "We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73

N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[13] Pursuant to Indiana Code Section 35-44.1-3-1(a)(1), for a defendant to be convicted of resisting law enforcement, the State must prove that the defendant knowingly or intentionally "forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties." Jenkins' specific argument is that the State failed to present sufficient evidence that Officer Pierson was lawfully engaged in her duties when conducting the investigatory stop and subsequently placing Jenkins in handcuffs because she did not have reasonable suspicion.

[14] "The general rule in Indiana is that a private citizen may not use force to resist a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties, regardless of whether the arrest in question is lawful." *Woodson v. State,* 123 N.E.3d 175, 178 (Ind. Ct. App. 2019) (citing *Shoultz v. State,* 735 N.E.2d 818, 823 (Ind. Ct. App. 2000), *reh'g denied, trans. denied*). Questions of individual liberties, however, are at issue. Under *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968), an officer may "stop and briefly detain a person for investigative purposes," so long as he can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Kelly v. State*, 997 N.E.2d 1045, 1051 (Ind. 2013) (internal citations omitted). "A *Terry* stop, thus, is permissible without a warrant or probable cause if the officer has reasonable suspicion to justify the stop." *Id.*

In making his arguments, Jenkins compares his case to *Gaddie v. State,* 10 N.E.3d 1249 (Ind. 2014). In *Gaddie,* Gaddie was charged with resisting law enforcement for fleeing from law enforcement. The police officer was responding to a call regarding a "disturbance" and arrived at a house with several people outside. Gaddie and a few other individuals were walking along the side of the house. *Gaddie,* 10 N.E.3d at 1252. One of the officers attempted to gather the group to the front of the house and asked Gaddie to join the group. Instead of complying with the officers' requests, Gaddie walked away. At the time, officers did not see Gaddie commit a crime, and Gaddie was not under arrest. Police ordered Gaddie to stop, and Gaddie failed to comply with their orders. Gaddie was charged with resisting law enforcement by fleeing from officers.

In resolving whether there was sufficient evidence to sustain Gaddie's conviction, our Supreme Court held that evidence of reasonable suspicion or probable cause that criminal activity was afoot was required in order for it to be a crime for Gaddie to walk away from law enforcement when ordered to stop. In assessing reasonable suspicion, our Supreme Court also held that a report of a disturbance without more "is not a sufficient basis upon which to conduct an investigatory stop," and that specific, articulable facts are required. *Id.* at 1255.

The State argues this case is more analogous to *Woodson,* 123 N.E.3d at 175. In *Woodson,* officers responded to a call regarding a disturbance and, after speaking with a woman, Woodson appeared at the window and began speaking with officers through the window. Sometime after asking Woodson to exit the

residence, which he would not do, Woodson left the residence and began walking down the sidewalk. As he walked past the officers, the officers told Woodson to stop; Woodson did not comply. Officers grabbed Woodson by the arm, and Woodson began jerking away from the officers' grasp. A scuffle ensued, and Woodson was charged, among other things, with resisting law enforcement, a Class A misdemeanor.

[18] Woodson argued the evidence was insufficient that officers were lawfully engaged in their duties. Specifically, Woodson argued the record contained "no evidence as to what crime the officers suspected him to have committed and no specific articulable facts that formulate reasonable suspicion or probable cause that he had committed a crime." *Woodson,* 123 N.E.3d at 177. In affirming Woodson's conviction, a panel of our Court noted that the officers in *Woodson* relied on significantly more facts than a call regarding a disturbance.

[19] We agree with the State that Jenkins' case is more similar to *Woodson* than *Gaddie*.[3] Officer Pierson's investigation was not merely based on the call of a disturbance alone. Instead, Officer Pierson had the following specific and articulable facts: (1) a disturbance was reported on a specific block in Indianapolis; (2) after arriving on the scene, Officer Pierson was directed to the vehicle Jenkins was inside by two witnesses who claimed two persons were physically fighting inside the vehicle; (3) Officer Pierson approached the vehicle

---

[3] Aside from the factual differences, *Gaddie* is also distinguishable because at issue was Indiana Code Section 35-44.1-3-1(a)(3) (2012), which made it a crime to flee from law enforcement.

and found Jenkins under a blanket; (4) Jenkins appeared to be concealing himself from Officer Pierson's vision; (5) after asking Jenkins his name, Jenkins responded angrily, telling officers he would not give them his "f\*\*\*ing name", tr. vol. II p. 7; (6) Jenkins was still not complying when he exited the vehicle; and (7) Jenkins resisted law enforcement attempting to detain him for investigation. While it is possible Officer Pierson did not have reasonable suspicion after the initial call, as was the case in *Gaddie,* the additional specific, articulable facts warranted a continuing investigation. Based on these same specific, articulable facts, we reject Jenkins' argument that Officer Pierson should have suspended the investigation after realizing there was no emergency.

[20] Moreover, as it relates to the officers placing Jenkins in handcuffs, Officer Pierson was permitted to do so because of Jenkins' continued noncooperation.[4] *See Perez v. State,* 981 N.E.2d 1242, 1249 (Ind. Ct. App. 2013) (finding that police have the "legal right to take reasonable steps to stabilize a situation" during an investigation, including "placing an individual in handcuffs to enable the officers to conduct their investigation and ensure their own safety or the safety of others") (citations omitted), *trans. denied.* At the time officers placed

---

[4] To the extent Jenkins argues that Indiana Code Section 35-41-3-2(i), the provision regarding "[u]se of force to protect person or property," would allow him to resist an unlawful arrest, this argument is waived, as it was raised for the first time in Jenkins' reply brief. *See* Appellant's Reply Br. p. 11. *See Jones v. State,* 22 N.E.3d 877 (Ind. Ct. App. 2014) (noting that parties may not raise issues for the first time in their reply briefs).

Jenkins in handcuffs, the officers' investigation was still ongoing based on the specific, articulable facts discussed above.

[21] The evidence was sufficient to support the fact finder's conclusion that Officer Pierson was lawfully engaged in her duties during the investigatory stop of Jenkins.

## Conclusion

[22] The State presented sufficient evidence to support Jenkins' conviction for resisting law enforcement. We affirm.

[23] Affirmed.


Riley, J., and Mathias, J., concur.