**FOR PUBLICATION**



**FILED**
Oct 30 2014, 6:36 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| M.J., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1403-JV-121 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Scott Stowers, Magistrate
Cause Nos. 49D09-1307-JD-1954
49D09-1206-JD-1621
49D09-1209-JD-2393
49D09-1305-JD-1286

**October 30, 2014**

**OPINION - FOR PUBLICATION**

**DARDEN, Senior Judge**

M.J. appeals his adjudication as a delinquent child for committing resisting law enforcement as a Class A misdemeanor if committed by an adult.

We reverse M.J.'s adjudication and vacate the February 19, 2014, dispositional orders in Cause Numbers 49D09-1206-JD-1621 (CN 1621), 49D09-1209-JD-2393 (CN 2393), and 49D09-1305-JD-1286 (CN 1286), which modified prior orders and include suspended commitments to the Indiana Department of Correction.

The sole issue for our review is whether there is sufficient evidence to support M.J.'s adjudication as a delinquent child.

In the late morning hours of July 9, 2013, Indianapolis Metropolitan Police Officers Brian Spengler and Vincent Leeds were dispatched to an apartment complex on the south side of Indianapolis to investigate a report of a suspicious person. The officers were looking for a young black male wearing a white t-shirt who was "seen around a [w]hite Ford SUV." Tr. p. 7. The officers arrived and looked around the complex but did not see anything or anyone in the area. Officer Spengler checked the SUV's license plate and learned that it was a stolen vehicle.

About thirty minutes after receiving the original dispatch, while the officers were standing by the SUV, Officer Leeds noticed M.J., a young black male wearing a maroon shirt, walking towards the officers with his head down looking at the ground. When he looked up and saw the officers, M.J. immediately turned and headed east. He looked over his shoulder at the officers, walked faster, and then began to run, which prompted Officer Spengler to yell, "Police, come here!" Tr. p. 11. M.J. kept running, and when the officers

2

lost sight of him, they activated the lights and sirens in their car and began looking for him. The officers requested assistance, and police canines found M.J. hiding under some trees.

On July 10, 2013, the State alleged that M.J. was a delinquent child for committing resisting law enforcement, a Class A misdemeanor, if committed by an adult. As a result of this allegation, the State filed petitions to modify the dispositional decrees in the following three prior adjudications: 1) CN 1621 – auto theft, a Class D felony if committed by an adult; 2) CN 2393 – theft, a Class D felony if committed by an adult; and 3) CN 1286 – theft, a Class D felony if committed by an adult.

At a January 2014 hearing, Officer Spengler testified that he attempted to stop M.J. because the young man ran. M.J. testified that he lived in a house in a nearby neighborhood and cut through the apartment complex for a quicker route to the bus stop. He explained that on July 9, 2013, his family overslept, and he was running to catch the bus to the Boys and Girls Club. He further explained that he hid under the trees when he heard the sirens because he "didn't want to be a part of" whatever was happening. Tr. p. 27. M.J.'s father testified that he overslept the morning of July 9, and was not able to take M.J. to the Boys and Girls Club.

On February 19, 2014, the juvenile court found that M.J. committed resisting law enforcement, a Class A misdemeanor if committed by an adult, and placed him on probation with a suspended commitment to the Indiana Department of Correction. The juvenile court also modified the orders in CNs 1621, 2393, and 1286 to include the same suspended commitment to the Indiana Department of Correction. M.J. appeals his adjudication and the modified orders in CNs 1621, 2393, and 1286.

M.J. argues that there is insufficient evidence to support his adjudication as a delinquent child for committing resisting law enforcement as a Class A misdemeanor if committed by an adult. Specifically, he contends that he:

> had an absolute right to turn and walk the other way when he saw Officers Spengler and Leeds. When they began to yell stop and chase him, the Fourth Amendment was implicated, and once that happened they needed a reasonable and articulable suspicion that M.J. was, had been, or was about to be engaged in criminal activity before [they] could stop him. . . . Because they did not, the True Finding and Dispositional Order on . . . Resisting Law Enforcement, a Class A misdemeanor if committed by an adult, must be vacated.

Appellant's Br. p. 16.

To convict M.J. of resisting law enforcement as charged, the State was required to prove beyond a reasonable doubt that M.J. fled from law enforcement officers after the officers, by visible or audible means, identified themselves and ordered M.J. to stop. *See Griffin v. State*, 997 N.E.2d 375, 379 (Ind. Ct. App. 2013), *trans. denied*, (citing Ind. Code § 35-44-3-3). Although the resisting law enforcement statute, on its face, does not expressly require the order to stop to be lawful, in order to interpret the statute as constitutional, the Indiana Supreme Court has explained that such an order to stop must be understood to require probable cause or reasonable suspicion. *Gaddie v. State*, 10 N.E.3d 1249, 1254, 55 (Ind. 2014). Absent proof that an officer's order to stop rests on probable cause or specific, articulable facts that would lead the officer to reasonably suspect that criminal activity was afoot, the evidence will be insufficient to establish the offense of resisting law enforcement. *Id.* at 1255.

For example, in *Gaddie*, a police officer was dispatched to a disturbance at an Indianapolis residence. When he arrived, he saw several people standing on the front porch

4

and in the front yard screaming and yelling. The officer also saw Gaddie and several others walking along a side yard toward the back of the house. The officer told the group to return to the front yard. Everyone but Gaddie complied. The officer identified himself as a police officer and told Gaddie to stop. Gaddie continued walking toward an alley, and the officer followed him and repeated his order to stop. Gaddie looked back at the officer two or three times but continued walking. The officer, who had not seen Gaddie commit a crime before ordering him to stop, radioed for help, and another officer stopped Gaddie at the next street over. The trial court convicted Gaddie of resisting law enforcement.

On appeal, Gaddie argued that there was insufficient evidence to support his conviction because the officer did not have reasonable suspicion to believe that criminal activity had occurred or was afoot. The Indiana Supreme Court agreed. Specifically, the Court explained that the officer was dispatched to a disturbance and had not seen the defendant committing a crime before ordering him to stop. *Id.* at 1255. The report of a disturbance, without more, is not a sufficient basis upon which to conduct an investigatory stop. *Id.* Further, refusal to cooperate, without more, does not furnish the minimal level of justification needed for a detention or seizure. *Id.* at 1256. (Citing *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991)). The Indiana Supreme Court therefore reversed Gaddie's conviction. *Id.*

Similarly, in *Griffin*, 997 N.E.2d at 375, Griffin was walking down the street when a police officer passed him in a marked car. When the officer looked in his rearview mirror, Griffin appeared to be gesturing at him. Believing Griffin might be unstable, the officer called for backup as he turned his car around and drove back to Griffin. Officer Miller got

out of his car and asked Griffin what was happening. Griffin, shouting in a somewhat incoherent manner, accused Miller of trying to run over him. Griffin, who was standing fifteen feet away from the officer, threw two shadow punches and ran away from the officer. The officer pursued Griffin, shouting at him to stop and warning him that he would use his taser if necessary. Griffin did not stop, and the officer deployed his taser, which caused Griffin to fall to the ground. Griffin stood up and struck the officer as the officer attempted to handcuff him. Several officers arrived, tackled Griffin, tased him four times, and eventually handcuffed him. The trial court convicted Griffin of battering the officer and of resisting law enforcement in relation to disregarding the officer's command to stop.

On appeal, Griffin argued that there was insufficient evidence to support his conviction of resisting law enforcement because the evidence did not reflect any suggestion of criminal activity afoot. This Court agreed and noted that although Griffin appeared to be unstable and threw shadow punches from a considerable distance before running away, none of his actions suggested any criminal offense. *Id.* at 380. Without evidence demonstrating grounds for detention, we reversed Griffin's conviction for resisting law enforcement. *Id.*

The facts before us are similar to those in *Gaddie* and *Griffin.* Here, the officers were dispatched to an apartment complex on the south side of Indianapolis to investigate a report of a suspicious young black male wearing a white t-shirt who was seen "around" a white SUV. Tr. p. 7. The officers found nothing when they arrived at the complex. It was thirty minutes after the officers were dispatched to the scene that they noticed M.J., a young black male wearing a maroon t-shirt, approaching them in the distance. When M.J. looked

up and saw the officers, he turned, looked over his shoulder, began to walk faster, and then began to run, which prompted Officer Spengler to yell at M.J. to stop. Here, as in *Gaddie* and *Griffin,* none of M.J.'s actions suggested there was any criminal activity afoot. Without evidence demonstrating grounds for detention, we reverse M.J.'s adjudication as a delinquent. We also vacate the February 19, 2014 dispositional orders entered in CN678-098s 1621, 2393, and 1286.

Reversed in part and vacated in part.

Friedlander, J., and May, J., concur.