FILED

Feb 09 2024, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

A.V.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

February 9, 2024

Court of Appeals Case No.
23A-JV-1765

Appeal from the Hendricks Superior Court

The Honorable Ryan W. Tanselle, Judge

Trial Court Cause No.
32D03-2212-JD-195

---

**Opinion by Judge Tavitas**
Judges Mathias and Weissmann concur.

**Tavitas, Judge.**

## Case Summary

[1] A.V., a juvenile, was adjudicated a delinquent for committing battery against a public safety official, a Level 6 felony if committed by an adult, and resisting law enforcement, a Class A misdemeanor if committed by an adult. On appeal, A.V. challenges the sufficiency of the evidence to support her adjudications. Specifically, A.V. argues that her adjudications must be reversed because the officer lacked reasonable suspicion to stop her. We address A.V.'s arguments despite A.V.'s failure to object to the evidence at trial. We find, however, that the officer had reasonable suspicion to stop A.V. and that the evidence is sufficient to sustain her adjudications. Accordingly, we affirm.

## Issue

[2] A.V. raises one issue, which we restate as whether the State presented sufficient evidence to support A.V.'s adjudications when, according to A.V., the police officer lacked reasonable suspicion to stop her.

## Facts

[3] In the early morning hours of Wednesday, December 21, 2022, Danville Police Department Officer Kennedy Molina was pursuing a vehicle that had committed several traffic infractions. The vehicle drove into a ditch, and the two young male occupants fled on foot into a nearby neighborhood in Avon. Officer Molina pursued the individuals on foot, and law enforcement set up a perimeter. Law enforcement eventually located the passenger of the vehicle,

and after speaking with him, law enforcement believed that someone was driving to the neighborhood to pick up the other suspect, who was last seen near Quillen Court.

[4] Avon Police Department Lieutenant Thomas Owens and other officers continued to search for the suspect. After approximately one hour, Lieutenant Owens turned onto Quillen Court, and he noticed a vehicle's brake lights switch from on to off. It was twenty-five degrees outside, and every other vehicle had frost on the windows except for this vehicle. This information led Lieutenant Owens to believe the vehicle had been driven recently. Additionally, the vehicle's license plate was not registered to anyone residing in the neighborhood, and the vehicle was parked at an angle by the curb, as if it had "just [] pulled in." Tr. Vol. p. 15.

[5] At this point, Lieutenant Owens believed the vehicle was there to pick up the suspect, and he approached the vehicle. He noticed that the driver, A.V., appeared to be a fifteen- or sixteen-year-old girl. The following exchange then took place:

> Lt. Owens: So where's he at?
>
> A.V.: I don't know.
>
> Lt. Owens: Where did he tell you to pick him up at?
>
> A.V.: He didn't tell me to pick him up.

Lt. Owens: What did he tell you to do?

A.V.: He didn't tell me to do anything.

Lt. Owens: Then why are you here?

A.V.: Because I'm sitting here.

Lt. Owens: How old are you?

A.V.: Does that matter?

Lt. Owens: Yes, it does.

State's Ex. 1 at 1:06-1:29. A.V. refused to provide her age.

[6] Lieutenant Owens then instructed A.V. to step outside the vehicle several times, but a defiant A.V. refused. The doors were locked, so Lieutenant Owens reached inside the vehicle to unlock the door. He tried to pull A.V. out by the wrist, but A.V. "pulled back in to try and get away." Tr. Vol. p. 16. Lieutenant Owens eventually pulled A.V. from the vehicle, while A.V. flailed, screamed, and cursed at the officers. A.V. kicked Lieutenant Owens in the shoulder, arm, and back as he attempted to place her in handcuffs. A.V. screamed that the handcuffs hurt, and Lieutenant Owens loosened them.

[7] After loosening the handcuffs, Lieutenant Owens instructed A.V. to sit down, but A.V. refused. Lieutenant Owens then pulled A.V. to the ground and again

asked A.V. her age, which A.V. would not provide. Officers eventually located the suspect hiding in the back of A.V.'s vehicle.

[8] The State filed a delinquency petition, which alleged that A.V. committed battery against a public safety official, a Level 6 felony if committed by an adult, and resisting law enforcement, a Class A misdemeanor if committed by an adult. The juvenile court held a fact-finding hearing on May 1, 2023.

[9] Prior to the fact-finding hearing, A.V. did not file a motion to suppress any evidence that was obtained as a result of her exchange with the police. During the bench trial, Officer Molina and Lieutenant Owens testified to the facts stated above. The State also admitted into evidence Lieutenant Owens's body camera footage from the incident, which corroborated his testimony. A.V. made no objection to any of this evidence based on the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution. Instead, A.V. argued in her closing argument that Lieutenant Owens lacked reasonable suspicion to stop the vehicle. After taking the matter under advisement, the juvenile court, on May 26, 2023, issued its order finding that A.V. was a delinquent child for committing the charged offenses. The juvenile court ordered that A.V. serve six months on probation with the possibility of an early release after five months. A.V. now appeals.

# Discussion and Decision

## I. Failure to Object at Trial

[10] A.V. challenges the sufficiency of the evidence to support her adjudications. Although A.V. characterizes the issue here as whether the State presented "sufficient evidence" to support her adjudications, Appellant's Br. p. 8, in reality, A.V. is challenging the traffic stop and her arrest on Fourth Amendment grounds.[1] She argues that Lieutenant Owens lacked reasonable suspicion to stop her. She also argues that, because Lieutenant Owens lacked reasonable suspicion or probable cause, he was "not acting lawfully," and she was, therefore, permitted to use reasonable force to resist the arrest.[2] *Id.* at 14.

[11] Prior to trial, A.V. did not move to suppress the evidence, nor did she object at trial to the admission of any of the evidence based on the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana

---

[1] A.V. does not rely on Article 1, Section 11 of the Indiana Constitution.

[2] The self-defense statute, Indiana Code Section 35-41-3-2(i), provides, in part:

> A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:
>
> (1) protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force;
>
> (2) prevent or terminate the public servant's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle; or
>
> (3) prevent or terminate the public servant's unlawful trespass on or criminal interference with property lawfully in the person's possession, lawfully in possession of a member of the person's immediate family, or belonging to a person whose property the person has authority to protect.

Constitution. She did not argue that Lieutenant Owens lacked reasonable suspicion until her closing argument.

[12] It is well-settled that the primary remedy for Fourth Amendment violations is the exclusion of evidence obtained in violation of those rights. *Shotts v. State*, 925 N.E.2d 719, 723 (Ind. 2010). The defendant, however, must lodge a "contemporaneous objection at the time the evidence is introduced at trial." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). Such an objection is required regardless of whether the defendant has filed a pretrial motion to suppress. *Id*. The failure to object to the evidence waives any challenge to the admission of the evidence on appeal. *Id.*; *see also* Ind. Evid. R. 103(a) (noting that a party may claim error in a ruling to admit evidence only if, among other things, the party timely objects or moves to strike). Here, A.V. neither moved to suppress the evidence before trial nor objected to the admission of the evidence at trial as an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution.

[13] Even when the appellant fails to properly object at trial, certain issues may be preserved for appeal under the fundamental error doctrine. *Brown*, 929 N.E.2d at 207. Fundamental error "occurs only when the error 'makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm.'" *Strack v. State*, 186 N.E.3d 99, 103 (Ind. 2022) (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). It is an "extremely narrow doctrine." *Isom v. State*, 170 N.E.3d 623, 651 (Ind. 2021). A.V. on appeal, however, does not

argue that the admission of the evidence constitutes fundamental error. *Bradfield v. State*, 192 N.E.3d 933, 935 (Ind. Ct. App. 2022) (citing App. R. 46(A)(8)(a)).

[14] We recognize, however, that, in *Gaddie v. State*, 10 N.E.3d 1249, 1253 (Ind. 2014), our Supreme Court addressed a Fourth Amendment challenge in the context of a sufficiency of the evidence argument involving a conviction for resisting law enforcement by fleeing. *See also M.J. v. State*, 19 N.E.3d 796, 798 (Ind. Ct. App. 2014) (relying upon *Gaddie* and addressing a Fourth Amendment challenge in the context of a sufficiency of the evidence argument for a resisting law enforcement by fleeing conviction), *trans. denied*; *Briggs v. State*, 873 N.E.2d 129, 132 (Ind. Ct. App. 2007) (addressing a Fourth Amendment challenge in the context of a sufficiency of the evidence argument for a resisting law enforcement by resisting conviction), *trans. denied*. In *Gaddie, M.J.*, and *Briggs*, the Courts did not mention whether the defendant objected at trial to the evidence or raised the Fourth Amendment issue at trial. Accordingly, notwithstanding A.V.'s failure to object at trial, we will address A.V.'s arguments. Generally, however, a defendant must object during the trial to the admission of the evidence to preserve the issue on appeal. *Brown*, 929 N.E.2d at 207.

## II. Sufficiency of the Evidence

[15] In sufficiency of the evidence arguments, we apply a "deferential standard of review," and we will "neither reweigh the evidence nor judge witness credibility." *Carmack v. State*, 200 N.E.3d 452, 459 (Ind. 2023). We examine

"all the evidence and reasonable inferences supporting the verdict," and we "will affirm the [adjudication] if probative evidence supports each element of the crime beyond a reasonable doubt." *Id.*

[16] Here, A.V. was adjudicated a delinquent for committing battery against a public safety official, a Level 6 felony if committed by an adult, and resisting law enforcement, a Class A misdemeanor if committed by an adult. The offense of resisting law enforcement is governed by Indiana Code 35-44.1-3-1(a), which provides: "A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is **lawfully engaged in the execution of the officer's duties** . . . commits resisting law enforcement, a Class A misdemeanor[.]" (emphasis added). The offense of battery is governed by Indiana Code Section 35-42-2-1, which provides that "a person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner . . .commits battery[.]" The offense is a Level 6 felony if committed "against a public safety official while the official is **engaged in the official's official duty** . . . ." I.C. § 35-42-2-1(e)(2) (emphasis added). A "law enforcement officer" is a "public safety official." I.C. § 35-42-2-1(a)(1).

[17] According to A.V., the officers "were not lawfully engaged in the execution of their duties as officers, a required element of both offenses for which A.V. was adjudicated and therefore could not be guilty of said offenses." Appellant's Br. p. 13. In support of her argument that the officers were not lawfully engaged in their duties, A.V. argues that they lacked reasonable suspicion to stop her. The

Fourth Amendment "'permits an officer to initiate a brief investigative traffic stop when he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Paul v. State*, 189 N.E.3d 1146, 1154 (Ind. Ct. App. 2022) (quoting *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020)), *trans. denied*; *see also Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868 (1968). Accordingly, police may conduct a brief investigatory stop, or *Terry* stop, based on "reasonable suspicion" that criminal activity is afoot. *Paul*, 189 N.E.3d at 1154.

[18] This Court has explained the reasonable suspicion standard as follows:

> "'Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Glover*, 140 S. Ct. [1183,] 1187 (quoting *Navarette v. California*, 572 U.S. 393, 397, 134 S. Ct. 1683, 188 L.Ed.2d 680 (2014)). . . .
>
> Courts must consider the "totality of the circumstances" when determining the existence or non-existence of reasonable suspicion. *See, e.g.*, *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L.Ed.2d 740 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting [*United States v.*] *Cortez*, 449 U.S. [411,] 418, 101 S. Ct. 690[, 695] [(1981)]. Reasonable suspicion "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette*, 572 U.S. at 402, 134 S. Ct. 1683 (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996)). We do not insist on "scientific certainty" but rather

permit officers to make "commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L.Ed.2d 570 (2000).

*Id*. at 1154-55. Additionally, "'[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct.'"[3] *Arvizu*, 534 U.S. at 277, 122 S. Ct. at 753.

[19] A.V. argues that Lieutenant Owens lacked reasonable suspicion to stop her. Based on their conversation with the passenger from the vehicle involved in the car chase, law enforcement believed that someone was driving to the neighborhood to pick up the other fleeing suspect, who had last been seen near Quillen Court. When Lieutenant Owens searched that location, he discovered a vehicle that appeared out of place and to have only recently arrived: the vehicle's brake lights were on, the vehicle was parked at an angle to the curb, and unlike the other vehicles in the area, this vehicle did not have frost on the windows. The vehicle was also not registered to anyone in the neighborhood. At this point, Lieutenant Owens had reasonable suspicion to briefly stop the

---

[3] In contrast to the reasonable suspicion requirement for a *Terry* stop, probable cause is required for an arrest. *Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). Probable cause exists when the officer "knows of facts and circumstances that would warrant a person of reasonable caution to believe" that the defendant committed an offense. *I.G. v. State*, 177 N.E.3d 75, 78 (Ind. Ct. App. 2021) (citing *Thomas v. State*, 81 N.E.3d 621, 626 (Ind. 2017)). Probable cause does not require certainty but only a "fair probability of criminal activity." *Mehring v. State*, 884 N.E.2d 371, 380 (Ind. Ct. App. 2008), *trans. denied*. The amount of evidence necessary to satisfy the probable-cause requirement "is evaluated on a case-by-case basis." *I.G.*, 177 N.E.3d at 78 (citing *Thomas*, 81 N.E.2d at 626). Both *Terry* stops and arrests are distinguished from "'consensual encounter[s],' during which the individual 'remains free to disregard the police officer and walk away.'" *Briggs*, 873 N.E.2d at 133 (quoting *Bovie v. State*, 760 N.E.2d 1195, 1198 (Ind. Ct. App. 2002)).

vehicle and asked investigatory questions. *See, e.g.*, *Paul*, 189 N.E.3d at 1155 (affirming finding that police had reasonable suspicion to stop a vehicle, in part, because vehicle was parked in the middle of the street at approximately 2:30 a.m. in front of a house police were surveilling as a part of a separate investigation). Lieutenant Owens was not required to rule out all possible innocent explanations for this constellation of circumstances to determine he had legal authority to act as he did. *See Arvizu*, 534 U.S. at 277.

[20] Additionally, the cases on which A.V. relies present fact patterns distinguishable from the facts here. A.V. relies on *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637 (1979); *Tumblin v. State*, 664 N.E.2d 783 (Ind. Ct. App. 1996); *M.J.*, 19 N.E.3d 796; *Gaddie*, 10 N.E.3d 1249; and *Briggs*, 873 N.E.2d 129. *Brown*, *Tumblin*, *M.J.*, and *Gaddie* essentially held that the mere fact than an individual changes his or her behavior or moves in the opposite direction upon noticing police in the area, even if the individual is in a high-crime area, is insufficient to establish reasonable suspicion or probable cause to stop the individual. *See Brown*, 443 U.S. at 48-49 (individual in high-crime area appeared to have been "about to meet" another man in the alley until police vehicle approached); *Tumblin*, 664 N.E.2d at 784-85 (individual in high-crime area turned to walk in the opposite direction upon seeing police vehicle approach); *M.J.*, 19 N.E.3d at 799 (individual wearing a different color shirt than the one for whom disturbance call was made turned and ran upon seeing police who had been dispatched to the scene); *Gaddie*, 10 N.E.3d at 1252 (officer was dispatched to residence for a disturbance call and individual

continued to walk away from the residence despite officer's orders). In *Briggs*, officers were at Briggs's apartment on "stand-by assistance" as Briggs's roommate retrieved his belongings, and this Court held that the officers lacked reasonable suspicion to order Briggs to stop moving towards his bedroom on a "hunch that he could have a weapon in his bedroom." 873 N.E.2d at 131, 133.

[21] In contrast to these cases, this is a case in which law enforcement believed someone was driving to the area to pick up a fleeing suspect and, a short time later, discovered a vehicle that appeared out of place and in a location where the suspect was known to have recently been. None of the cases upon which A.V. relies provide guidance for this scenario.

[22] We conclude that Lieutenant Owens had reasonable suspicion to conduct a brief investigatory stop of A.V. A.V. makes no argument that Lieutenant Owens could not ask her to exit her vehicle as part of the stop. *See State v. Cunningham*, 26 N.E.3d 21, 26 (Ind. 2015) ("A routine traffic stop presents enough 'concern for officer safety' that it 'may justify the minimal additional intrusion of ordering a driver and passengers out of the car[.]'") (internal quotation marks omitted, citations omitted). Accordingly, we conclude A.V.'s argument that the officers were not lawfully engaged in the execution of their duties fails.[4]

---

[4] Because the officers had reasonable suspicion to stop A.V., we need not address A.V.'s argument that she was entitled to use reasonable force to resist the officers.

When Lieutenant Owens repeatedly asked A.V. to get out of her vehicle, she refused to comply with Lieutenant Owens, pulled away from his grasp, and had to be forcibly removed from the vehicle. The body camera video of the encounter shows A.V. flailing, screaming, cursing, and actively fighting her removal from the vehicle. This evidence is sufficient to sustain A.V.'s adjudication for resisting law enforcement. Next, A.V. repeatedly kicked Lieutenant Owens, and this evidence is sufficient to sustain A.V.'s adjudication for battery. Accordingly, we conclude that the evidence is sufficient to sustain A.V.'s adjudications.

## Conclusion

We conclude that A.V.'s Fourth Amendment rights were not violated, and the evidence is sufficient to sustain A.V.'s adjudications. Accordingly, we affirm the judgment of the juvenile court.

Affirmed.

Mathias, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Audrey Lunsford
Lunsford Legal, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana